UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | No. 1:02-CR-187 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| ) | |
| DANIEL S. GEIGER ) | |

**M E M O R A N D U M**

Defendant Daniel S. Geiger ("Defendant") has filed a *pro se* Motion for Immediate Release from Post-Conviction Incarceration on Bail Pending Appeal (Court File No. 356). The Government filed two responses opposing this motion (Court File No. 357, 362). For the following reasons, the Court will **DENY** Defendant's motion.

Defendant was convicted by a jury of four counts of wire fraud in violation of 18 U.S.C. § 1343, three counts of graft in violation of 18 U.S.C. § 1954, one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), and six counts of money laundering in violation of 18 U.S.C. § 1957 (*see* Court File No. 279, Jury Verdict). Defendant was taken into custody after the verdict was reached, and was sentenced in this Court on February 4, 2005 to 108 months imprisonment to be followed by three years of supervised release (*see* Court File No. 323). Defendant has been serving his sentence in incarceration at Taft Correctional Institution in Taft, California.

Defendant filed a notice of appeal on February 9, 2005. Although this appeal originally was dismissed by the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") for want of prosecution on April 13, 2005 (*see* Court File No. 327), it was reinstated on July 28, 2005 (*see* Court

File No. 349).  This appeal is now pending.

Defendant's motion is governed by the Bail Reform Act of 1984, as revised, which requires the district court to

> order a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal . . . be detained, unless the judicial officer finds--
>     (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under [18 USCS § 3142(b) or (c)]; and
>      (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in--
>         (i) reversal,
>         (ii) an order for a new trial,
>         (iii) a sentence that does not include a term of imprisonment, or
>         (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.
> If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with [18 USCS § 3142(b) or (c)] . . .

18 U.S.C. § 3143(b).  The Court would note the presumption is detention;  to be released, a defendant must show, by "clear and convincing evidence," both (1)  he is not likely to flee or pose a danger to the safety to a person or the community if released and (2)  the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to be successful in some manner on appeal.  *See United States v. Pollard*, 778 F.2d 1177, 1181 (6th Cir. 1985);  *United States v. Vance*, 851 F.2d 166, 168-69 (6th Cir.), *cert. denied*, 488 U.S. 893, 102 L. Ed. 2d 220, 109 S. Ct. 231 (1988).

**A.     Flight Risk or Danger to the Community**

Defendant first argues he is not a flight risk or danger to the community, pointing to the Bureau of Prisons' ("BOP") designation of his custody level as "minimum-out" with no risk to public safety  (Court File No. 356, Appendix A-1, A-2).  However, it appears Defendant typed the

documents on which he relies for this assertion, and the Court cannot rely on them as documentation by the BOP he is not a flight risk. The forms that do appear to have been generated by the Taft facility indicate Defendant's classification initially was "out custody" with a "security classificat'n minimum" (*id*. Appx. A-3), and he retained those classifications at his six-month review in October 2005 (*id*. Appx. A-4). Defendant states with his "out custody" classification, he is in the lowest security classification available to him considering his sentence is longer than sixty months.

Defendant further notes the Taft facility where he is incarcerated is a camp facility with no cells, guard towers, or fences and only a minimal security staff. Defendant also states, while he has been at Taft, he has been working on jobs such as gardening that are unsupervised, such that he "is confined at the facility <u>only</u> by <u>his personal sense of honor</u> and <u>obligation</u> to the conditions of his classification, and his <u>acceptance of responsibility</u> to his family and community to abide by the rules of his incarceration" (*id*. p. 6) (emphasis in original).

Defendant next argues his prearrest and pretrial conduct both evidence he is not a flight risk. Defendant notes he had knowledge of the investigation that resulted in the indictment in this case at least 18 months prior to his arrest, and had the opportunity and financial capacity to flee and evade prosecution, but did not do so, instead voluntarily surrendered himself. Defendant further notes he was not detained after his arrest but remained on bond for close to two years prior to trial, and made all required appearances in Chattanooga, Tennessee although he was located in Las Vegas, Nevada.

As the Government notes in its reply, the Court considered and rejected this argument at the detention hearing it held just after the jury returned its guilty verdict on August 16, 2004, finding Defendant to be a serious flight risk. During that post-verdict hearing, Defendant was given the

3

Case 1:02-cr-00187   Document 364   Filed 03/17/06   Page 3 of 8   PageID #: 838

opportunity to put on proof to satisfy his burden of proving he should be released pending sentencing.[1] This evidence, which was extensive, focused solely on Defendant's risk of flight.

Defendant's first witness was supervisory pretrial services officer Beth Miller, who testified about Defendant's personal circumstances. Defendant is divorced, and has a son who was 26 and daughter who was 18 at the time of the hearing. Defendant's children live in Grass Valley, California within close proximity to one another. Ms. Miller spoke to Defendant's son, who told her he saw his father about once a month and his parents maintain a close relationship despite their divorce, speaking to each other frequently. Ms. Miller stated Defendant had been living with Cherie Phillips in Las Vegas, Nevada for approximately two years prior to trial. Defendant had been paying the monthly mortgage payment for that residence although Ms. Phillips owned it. Ms. Phillips formerly had been employed as a topless nightclub dancer but for the past two years had mostly been a stay-at-home mother with her three children, and had worked for several months as a nail technician at a salon. Ms. Miller did not have any information about whether Ms. Phillips had a criminal history. Ms. Miller indicated it seemed to her Defendant's relationship with Ms. Phillips was more than casual, particularly considering Defendant was supporting Ms. Phillips financially, but she did not believe this relationship was a strong tie that would prevent him from fleeing. Defendant's business associate John Grossman then testified Defendant and Ms. Phillips were involved romantically and it appeared Defendant cared deeply for her and vice versa. Ms. Miller believed Defendant's closest tie to the community would be his relationship with his physicians

---

[1] A defendant bears a similar burden of proof for release pending sentencing, under 18 U.S.C. § 3143(a) as he does on the first prong of release pending appeal under 18 U.S.C. § 3143(b). Defendant's burden for release pending sentencing was to show, by clear and convincing evidence, he was "not likely to flee or pose a danger to the safety of any other person or the community if released . . ." 18 U.S.C. § 3143(a)(1).

4

considering his ongoing health issues.

Ms. Miller also testified Defendant reported at his initial appearance in California in November 2002 he lived in Grass Valley, California with his now ex-wife. In December 2002, Defendant made an appearance in the Eastern District of Tennessee and did not disclose to the Court the fact he and his wife were actually estranged at that time and he was not living at the Grass Valley, California residence he had previously reported. In fact, Ms. Miller testified Pretrial Services did not know Defendant was living outside of Grass Valley, California until May 2004, when she had difficulty contacting Defendant at the Grass Valley residence. Ms. Miller, after contacting Defendant's attorneys who told her he was then living in Las Vegas, Nevada, was able to make contact with Defendant, who told her his new address was 5625 West Flamingo in Las Vegas. Ms. Miller testified on the date of the hearing she learned Defendant was not in fact residing at the West Flamingo address either, but actually was living at 8605 Grand Pine in Las Vegas, the residence owned by Cherie Phillips, where he had lived for approximately two years. Ms. Miller indicated Defendant's inability to give her a straightforward answer to basic questions and demonstrated lack of honesty regarding his residence concerned her about his risk of flight, and his movement between residences showed a real instability that also caused her concern.

The Government called Federal Bureau of Investigation Special Agent Jeff Blanton, who testified approximately $500,000 of the money involved in Defendant's fraudulent scheme was unaccounted for despite the Government's best efforts to track it down. Special agent Blanton also testified he believed Defendant had assets available to him outside the United States the Government had not been able to find.

According to a 2002 criminal records check, Defendant had no previous convictions, failures

5

to appear, or accidents on his record, and had a valid driver's license. However, the Court noted Efrem Ullmann testified during Defendant's trial Defendant threatened him, and filed a report with the police about those threats. Additionally, Defendant had at least one prior civil judgment for fraud.

Although Defendant's attorneys indicated Defendant had surrendered his passport to them, the Government noted Defendant could go to Mexico without a passport and travel elsewhere from there. The Government also submitted the findings of fact and conclusions of law from a 1998 civil fraud judgment, which indicated Defendant traveled to Liberia in the 1990s during a time period when that country was involved in a violent civil war. The Court noted this showed Defendant had some familiarity with traveling outside the United States to dangerous locations from which it might be difficult for the Government to bring him back to the United States.

The Court, after evaluating all the evidence presented during the hearing, found Defendant had been involved in fraud and dishonesty for the past ten years, as evidenced by the civil fraud judgment, and had been dishonest more recently to Pretrial Services with regard to his residence. The Court noted Defendant had no steady employment that would motivate him not to flee. The Court further found Defendant's personal relationships were not of the type that would keep him in the United States, and was particularly concerned about Defendant's relationship with Ms. Phillips, considering her background. The Court was concerned about Defendant's access to unknown sums of money and his ability and history of international travel to locations from which he would be difficult to bring back to the United States. The Court concluded Defendant had not proven by clear and convincing evidence he would not be likely to flee.

The Court also considered releasing Defendant on bond pending sentencing upon his motion

(Court File No. 291), but found the risk of flight was too great to grant that motion (Court File No. 294). The Court again in that ruling found Defendant had the means and ability, as well as the incentive, to flee.

While Defendant's assertion of his good behavior while incarcerated at a minimum-security facility is certainly commendable, it does not convince the Court Defendant would not be a significant flight risk, for all the reasons stated in ruling on his prior motions for release, if released pending his appeal. Defendant has not addressed those areas that concerned the Court, particularly his lack of strong ties to any community or work commitments that would provide a disincentive to flight, access to unknown amounts of cash, and ability and willingness to travel internationally to areas from which the Government likely would not be able to retrieve him. Because Defendant has not alleviated the Court's concerns, Defendant has not met his burden of showing, by "clear and convincing evidence," he is not a flight risk. 18 U.S.C. § 3143(b).

**B.    Appeal Not for Purpose of Delay; Raises Substantial Question of Law or Fact Likely to be Successful on Appeal**

The Court need not consider the second element, whether the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to be successful in some manner on appeal, as Defendant has not met his burden of convincing the Court of the first element.

**C.    Conclusion**

For the foregoing reasons, the Court will **DENY** Defendant's Motion for Immediate Release from Post-Conviction Incarceration on Bail Pending Appeal (Court File No. 356).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

7

8